Mario MIJANGOS, Petitioner,

v.

AVONDALE SHIPYARDS, INC., and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 90–4700.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1991.

Rehearing Denied Jan. 28, 1992.

Philip E. Henderson, Houma, La., for respondents.

Joshua T. Gillelan, II, Dept. of Labor, Office of the Sol., Washington, D.C., for Director OWCP.

Patrick H. Patrick, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for petitioner.

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

The claimant, Mr. Mario Mijangos, seeks reversal of two orders of the Benefits Review Board ("the Board"). Mr. Mijangos contends that the Board exceeded its statutorily defined powers of review and committed an error of law when it reversed the original decision of the administrative law judge. We agree that the Board exceeded its power of review. We do not reach the question of whether the Board committed an error of law. The orders of the Board are reversed and the original order of the administrative law judge is reinstated.

## BACKGROUND

The claimant, Mr. Mario Mijangos, was hired by Avondale Shipyards, Inc. ("Avondale") in 1965 as an electrician. Mr. Mijangos injured his left wrist and arm on June 25, 1975, while working in the hold of a ship at Avondale.

On May 14, 1976, Mr. Mijangos filed a claim for the injury to his arm under the Longshore and Harbor Workers' Compensation Act ("LHWCA")[1] against Avondale, which is self-insured. Avondale denied that any benefits were due. The trial of the LHWCA claim was set for April 6, 1977.

On March 22, 1977, Avondale sent Mr. Mijangos a check for $11,009.80 and unilaterally informed the administrative law judge that this payment represented all sums due to Mr. Mijangos up to that date. The administrative law judge took the case off of the trial docket. Avondale continued to make payments of $151.22 a week to Mr. Mijangos until December 30, 1982, when Avondale stopped making any payments to Mr. Mijangos.

A trial was held before Administrative Law Judge James R. Howard on February 17 and 18, and March 18, 1983. Judge Howard died before issuing a decision, and the case was assigned to Administrative

---

1. 33 U.S.C. § 901 et seq.

Law Judge Quentin P. McColgin ("the ALJ"). The ALJ issued a decision and order on May 3, 1984, ("the original order") finding Mr. Mijangos totally and permanently disabled; he also found that Mr. Mijangos could not perform any of the jobs suggested by Avondale as suitable alternative employment.[2] The order awarded benefits commensurate with the ALJ's findings.

Avondale appealed this order to the Board as authorized under 33 U.S.C. § 921(b). The Board reversed the original order of the ALJ and remanded the case to the ALJ. The Board found that the ALJ had not given sufficient weight to the expert medical testimony. In its order remanding the case, the Board also informed the ALJ that "[a]n employer can establish suitable alternative employment by offering an injured employee a light duty job which is tailored to the employee's physical limitations, so long as the job is necessary and claimant is capable of performing it".[3]

On remand the ALJ found that Mr. Mijangos was not totally and permanently disabled. The ALJ also found that Mr. Mijangos could perform the jobs suggested by Avondale as suitable alternative employment. These findings were based on the same record as the findings in the original order. The Board affirmed this second order of the ALJ.[4]

Mr. Mijangos, under 33 U.S.C. § 921(c), sought review in this Court of both decisions of the Board. The Director of the Office of Workers' Compensation Programs, United States Department of Labor ("the Director") also filed a brief urging reversal of the Board's decisions and reinstatement of the original order of the ALJ.

## DISCUSSION

Mr. Mijangos and the Director contend that the Board exceeded its power of review and committed an error of law when it remanded the case to the ALJ. Before discussing the merits of their arguments, however, we must deal with a jurisdictional argument raised by Avondale.

### A. *Jurisdiction to review the original order.*

Avondale correctly points out that under 33 U.S.C. § 921(c), this Court has jurisdiction to review only final orders of the Board. Avondale also correctly states that an order remanding a case is not a final order. Avondale goes astray, however, when it concludes from those statements that this Court may not now review the order remanding this case to the ALJ.

This Court has held that an order remanding a case is not a final order and therefore may not be appealed.[5] Avondale does not contend that there is no final order in this case. Rather, Avondale argues that this Court can review only the final order, not any orders prior to it—such as the order remanding this case to the ALJ.

Avondale's argument completely misreads the *Newpark* case. In that case we held that "the present Board order ... is ... not subject to judicial review *at this time*".[6] That this Court previously had no jurisdiction to review the order remanding the case does not mean that this Court may never review that order. "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency

---

**2.** The original order also included findings and decisions on other matters, some of which were reversed and remanded to the ALJ. None of these other matters have been appealed to this Court.

**3.** *Mijangos v. Avondale Shipyards, Inc.,* 19 BRBS 15, 19 (1986).

**4.** The second order of the ALJ modified paragraphs two and four of the original order and gave Avondale a $2,600 credit for payments

made under the Employers Group Short–Term Disability Non–Occupational Benefits Program. The issues on appeal to this Court concern only paragraph two of the original order.

**5.** *Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 406 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 818, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984).

**6.** *Id.* (emphasis added).

action." [7]

Even if this provision of the Administrative Procedure Act did not apply, logic and due process would require that this Court be able to review the decision to remand. As will be discussed later, the evidence in this case could support a decision for either party. The original order of the ALJ found for the claimant. The Board reversed that order even though it was supported by substantial evidence. On remand the ALJ was forced to abandon his previous credibility determinations and completely reverse his own decision. If this Court could not now review the decision to remand, the Board would be free to remand close cases until the ALJ produced an order that comported with the Board's view of the facts. The Board cannot usurp the fact-finding responsibility of the ALJ through its limited power of review.

B. *The Board exceeded its powers of review.*

■ The Board does not have the authority to engage in a *de novo* review of the evidence or to substitute its views for those of the ALJ.[8] The findings of the ALJ must be accepted unless they are not supported by substantial evidence in the record considered as a whole or unless they are irrational.[9]

■ In the original order, the ALJ found that Mr. Mijangos could not return to his prior job. No party disputes this finding, which establishes the prima facie case of total and permanent disability. Once the employee establishes his prima facie case,

the burden of going forward shifts to the employer to demonstrate the types of jobs the claimant is capable of performing and the availability of this type of employment.[10]

The basis of the ALJ's original order was that Avondale had failed to show that Mr. Mijangos was capable of performing any of the jobs suggested by Avondale. Thus, the issue of availability did not need to be considered. The ALJ based this finding on the fact that the record revealed that Mr. Mijangos was in constant pain.[11] The ALJ noted that a finding of disability can be based on nothing more than a claimant's credible complaints of pain,[12] and stated that an employee is not required to work in pain.

Considering the record as a whole, however, there was considerable evidence indicating that Mr. Mijangos was physically capable of performing a number of jobs. Mr. Hebert, Avondale's job placement supervisor, testified to a number of positions at Avondale that Mr. Mijangos might perform. Dr. Correa, who was qualified as an expert in neurosurgery, testified that Mr. Mijangos should be able to perform certain types of jobs provided that he would not have to use his left arm. Dr. Gorman, a rehabilitation services expert, testified that he thought there were various jobs Mr. Mijangos could perform.

■ The ALJ was thus faced with a situation in which there was much expert testimony indicating that Mr. Mijangos could physically perform certain jobs. There was also testimony indicating that Mr. Mijangos

---

7. Administrative Procedure Act § 10(c), 5 U.S.C. § 704.

8. *Presley v. Tinsley Maintenance Service,* 529 F.2d 433, 436 (5th Cir.1976).

9. *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.,* 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965); *Presley,* 529 F.2d at 436. *See also,* 33 U.S.C. § 921(b)(3): "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole."

10. *New Orleans (Gulfwide) Stevedores v. Turner,* 661 F.2d 1031, 1042 (5th Cir. Unit A Nov. 1981).

11. Contrary to counsel's statements at oral argument, the record is replete with evidence showing that Mr. Mijangos is in constant pain. Mr. Mijangos testified to this fact (*see, e.g.,* Transcript of Proceedings, February 17, 1983 ("Tr. 1"), at 59–60, 64, and 104–105); his wife testified to this fact (*see, e.g.,* Tr. 1 at 116); his daughter testified to this fact (*see, e.g.,* Tr. 1 at 125); Dr. Correa testified to this fact (*see, e.g.,* Transcript of Proceedings, March 18, 1983 ("Tr. 2"), at 289); and Dr. Kline testified to this fact (*see, e.g.,* Deposition of Dr. David G. Kline, January 7, 1977, at 5).

12. The ALJ cited to *Eller & Co. v. Golden,* 620 F.2d 71 (5th Cir.1980).

would have constant pain in any of these jobs. The facts in this case could support a finding in favor of either party. The choice between reasonable inferences is left to the ALJ and may not be disturbed if it is supported by the evidence.[13]

■ In the original order, the ALJ found that Mr. Mijangos was permanently and totally disabled. The ALJ chose not to rely on the evidence tending to show that Mr. Mijangos could physically perform certain jobs. In its decision and order remanding this case, the Board expressed its concern with the ALJ's failure to consider this evidence. The ALJ, however, clearly explained his reasons for not affording significant weight to the testimony of these persons. The ALJ noted that Mr. Mijangos had shown that there were certain aspects of the positions at Avondale that he could not perform. The ALJ also explained that he found the doctor's opinion on employment potential unrealistic because those opinions failed to consider the pain endured by Mr. Mijangos.

It is true that the ALJ did not discuss the testimony of Dr. Gorman. The record, however, reveals that Dr. Gorman's opinion did not take into account the pain medication Mr. Mijangos has to take or the pain he endures.[14] Moreover, Dr. Gorman expressly deferred to the medical testimony on the issue of whether Mr. Mijangos's pain would affect his ability to work.[15] Since the ALJ found that the medical testimony failed to attribute sufficient weight to this factor, it would be entirely reasonable for the ALJ to discount the testimony of Dr. Gorman, who, by his own admission, completely failed to consider pain as a factor.

■ All of the ALJ's determinations are amply supported by the record. The only conclusion that can be drawn is that the Board disagreed with the credibility determinations made by the ALJ.[16]

The Board exceeded its statutorily defined powers of review. The Board impermissibly reweighed the evidence and made its own credibility determinations. The ALJ was free to disregard parts of some witnesses' testimony while crediting other parts of that testimony.[17] All of the ALJ's credibility determinations and findings were both rational and supported by substantial evidence. The original order of the ALJ should have been affirmed.

## CONCLUSION

The Board exceeded its power of review when it remanded this case. Since we reinstate the ALJ's findings, including the dispositive finding that Mr. Mijangos cannot perform any job suggested by Avondale, we need not reach the issue of whether the Board committed an error of law. We REVERSE the July 31, 1990, decision of the Board and the July 17, 1986, decision of the Board in this case as they relate to paragraph two of the original order, and we REINSTATE paragraph two of the original order.

13. *Presley,* 529 F.2d at 436.

14. *See, e.g.,* Tr. 2 at 352 and 361.

15. Tr. 2 at 357.

16. Again, despite counsel's suggestions to the contrary, the record reveals that the Board reversed the ALJ's credibility determinations. This conclusion is supported by the Board's decision remanding this case: "the administrative law judge's reasons for *discrediting* Mr.

Guthrie are not rational". *Mijangos,* 19 BRBS 15, 19 (1986). Also, the ALJ obviously felt that his credibility determinations had been reversed: "the evidence will be reconsidered in total without the credibility determinations that the Board found irrational". Decision and Order, No. 82–LHC–2735, slip op. at 2 (December 9, 1987) (McColgin, ALJ).

17. *Banks v. Chicago Grain Trimmers Ass'n,* 390 U.S. 459, 467, 88 S.Ct. 1140, 1145, 20 L.Ed.2d 30 (1968).